UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KEANDRA L. HOBBS,                    )
                                     )    No. CV-09-0351-CI
          Plaintiff,                 )
                                     )    ORDER DENYING PLAINTIFF'S
v.                                   )    MOTION FOR SUMMARY JUDGMENT
                                     )    AND GRANTING DEFENDANT'S
MICHAEL J. ASTRUE, Commissioner      )    MOTION FOR SUMMARY JUDGMENT
of Social Security,                  )
                                     )
          Defendant.                 )
                                     )

     BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct.
Rec. 18, 20.)  Attorney Maureen J. Rosette represents Keandra L.
Hobbs (Plaintiff); Special Assistant United States Attorney David J.
Burdett represents the Commissioner of Social Security (Defendant).
The parties have consented to proceed before a magistrate judge.
(Ct. Rec. 9.)  After reviewing the administrative record and briefs
filed by the parties, the court **DENIES** Plaintiff's Motion for
Summary Judgment, and directs entry of judgment for Defendant.

**JURISDICTION**

     Plaintiff received supplemental security income (SSI) benefits
based upon disability as a child through June 1, 2007.  She was
allowed disability benefits in 1999 due to attention deficit
hyperactivity disorder and borderline intellectual functioning (mild

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1  mental retardation). (Tr. 62, 318.) In June 2007, when she

2  attained the age of 18, the Commissioner determined Plaintiff was no

3  longer disabled according to the adult requirements for disability.

4  (Tr. 42, 60-66.) Upon receipt of notice that she was no longer

5  eligible for benefits, Plaintiff filed a request for reconsideration

6  on July 12, 2007. She claimed she was still disabled due to

7  problems taking care of herself and getting a job. (Tr. 70.)

8  Benefits were denied on reconsideration. (Tr. 86.) Plaintiff then

9  requested a hearing before an administrative law judge (ALJ), which

10  was held on May 21, 2009, before ALJ R.J. Payne. (Tr. 418-44.)

11  Plaintiff, who was represented by counsel, and medical expert Ronald

12  Klein, Ph.D., testified. The ALJ determined Plaintiff's disability

13  ended on June 1, 2007, and she was not entitled to continuing SSI.

14  The Appeals Council denied review. (Tr. 17-24, 7-9.) The instant

15  matter is before this court pursuant to 42 U.S.C. § 405(g).

16  **STANDARD OF REVIEW**

17  In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

18  court set out the standard of review:

19      A district court's order upholding the Commissioner's
       denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
20     211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the
       Commissioner may be reversed only if it is not supported
21     by substantial evidence or if it is based on legal error.
       *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
22     Substantial evidence is defined as being more than a mere
       scintilla, but less than a preponderance. *Id.* at 1098.
23     Put another way, substantial evidence is such relevant
       evidence as a reasonable mind might accept as adequate to
24     support a conclusion. *Richardson v. Perales*, 402 U.S.
       389, 401 (1971). If the evidence is susceptible to more
25     than one rational interpretation, the court may not
       substitute its judgment for that of the Commissioner.
26     *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
       Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

27

28      The ALJ is responsible for determining credibility,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents her from engaging in a previous occupation. 20 C.F.R. § 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot perform (or does not have) past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the

hearing, Plaintiff was less than one week from her twenty-first birthday. (Tr. 430-31.) She was unmarried and had no children. (Tr. 431.) Plaintiff testified she lived with her mother, her siblings and the mother's boyfriend.[1] (*Id*.) She testified she graduated from high school where she attended mostly special education classes. (Tr. 432.) She reported no past work experience and no income, except food stamps. (Tr. 433-34.) She stated she did not have a driver's license and had not attempted to get one. (Tr. 436.) Plaintiff also reported she did not take over-the-counter medication or prescribed medication for her alleged conditions. (Tr. 399, 439.) She stated she could not work because she could not handle the stress of a job. (Tr. 439.)

## ADMINISTRATIVE DECISION

ALJ Payne initially found Plaintiff was no longer eligible for social security benefits as a child as of June 1, 2007, because she had attained 18 years of age. (Tr. 19.) Applying the rules for adults who file new applications under Title XVI of the Social Security Act, he made step two findings that Plaintiff had the severe impairment of depression. (*Id*.) At step three, he found

---

[1] Plaintiff's testimony on May 21, 2009, that she lived with "Boyfriend, mother, brothers," is not entirely clear. (Tr. 431.) The ALJ understood that she lived with her mother, the mother's boyfriend and her siblings. (Id.) However, in the psychological report dated May 4, 2009, Plaintiff reported she lived with her boyfriend in his mother's home. (Tr. 389.) At the hearing, the medical expert referenced reports that Plaintiff was living with her boyfriend "currently in mother's home." (Tr. 423.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

Plaintiff did not have an impairment or combination of impairments, that met or medically equaled one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 20.)   At step four, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform work at all exertional levels with the following non-exertional limitations:

> The claimant is capable of performing simple tasks, but her attention and concentration may wane with introduction of new tasks or procedures.  Her pace would be adequate for simple tasks, but she would need more time to learn new work tasks or procedures.  She has no social limitations, but some assistance with goal setting would be helpful.

(Tr. 21.)

In his discussion of Plaintiff's RFC, the ALJ summarized Plaintiff's testimony and concluded her statements regarding the severity of her functional limitations were not credible to the extent the limiting effects were inconsistent with the RFC above. (Tr. 21-22.)   At step four, he found Plaintiff had no past relevant work.   (Tr. 23.)   Proceeding to step five, and referencing the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the Grids), as a framework for his decision making, he concluded Plaintiff's nonexertional limitations had little or no effect on the occupational base of unskilled work; thus, her limitations did not compromise her ability to perform work at all exertional levels.   He concluded Plaintiff was not disabled as of June 1, 2007.  (Tr. 24.)

### ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Plaintiff argues the

ALJ erred when: (1) he improperly rejected the opinions of examining psychologist Dennis Pollack, Ph.D.; (2) he relied on medical expert testimony of a non-examining psychologist;(3) he improperly assessed her RFC; and (4) he made step five findings without consulting a vocational expert.  (Ct. Rec. 19 at 6.)

## DISCUSSION

### A.   Acceptable Medical Source Opinions

In disability proceedings, the ALJ evaluates the medical evidence submitted and must explain the weight given to opinions of accepted medical sources in the record.  The Regulations distinguish among the opinions of three types of accepted medical sources: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records.   20 C.F.R. § 416.927.  A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion.  *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Lester*, 81 F.3d at 830.  If the medical opinion is contradicted, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews,* 53 F.3d at 1043.

State agency reviewing psychologists and medical experts who

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

testify at disability hearings are treated as non-examining experts in disability proceedings.  The ALJ may not ignore these opinions and must explain the weight given.  *SSR* 96-6p.  The analysis and opinion of an expert selected by the ALJ may be helpful in his adjudication, and the court should not second guess the ALJ's resolution of conflicting medical testimony.  *Andrews,* 53 F.3d at 1041 (*citing Magallanes v. Bowen,* 881 F.2d 747, 753 (9th Cir. 1989)).  Further, testimony of a medical expert may serve as substantial evidence that supports the rejection of a treating or examining physician when supported by and consistent with other evidence in the record.  *Id.*  If supported by substantial evidence, the ALJ's decision must be upheld, even where the evidence is susceptible to more than one rational interpretation.  *Andrews,* 53 F.3d at 1039-40.

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints as "specific and legitimate" reasons for disregarding a treating or examining physician's opinion.  *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Medical opinions based on a claimant's subjective complaints may be rejected where the claimant's credibility has been properly discounted.[2]  *Tonapetyan v.*

---

[2] The ALJ made specific credibility findings that are "clear and convincing" and unchallenged.  (Tr. 21-22); *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).  The ALJ properly noted

*Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).   The claimant's credibility is also an appropriate factor weighed in the evaluation of medical evidence.  *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).  Where an ALJ determines a treating or examining physician's stated opinion is materially inconsistent with the physician's own treatment notes, legitimate grounds exist for considering the purpose for which the doctor's report was obtained and for rejecting the inconsistent, unsupported opinion.  *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).  Rejection of an examining medical source opinion is specific and legitimate where the medical source's opinion is not supported by his own medical records and/or objective data.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Plaintiff argues the ALJ erroneously rejected findings by Dr. Pollack included in his medical source statement (MSS) dated May 4, 2009.  (Ct. Rec. 22 at 2; *see* Tr. 388-398.)  As part of the psychological evaluation, Dr. Pollack administered nine objective tests, including the Trail Making test (Trails A and B), the Wechsler Adult Intelligence Scale-III (WAIS-III), the Minnesota Multiphasic Personality Test-II (MMPI-2), and the Test of Memory and

evidence of malingering and exaggeration of symptoms in objective psychological testing, as well as inconsistency between Plaintiff's statements and objective medical evidence; lack of mental health treatment or medication for allegedly disabling mental problems; and evidence of activities of daily living and socializing inconsistent with limitations claimed.  (Tr. 22.)  These are legally sufficient reasons supported by substantial evidence.  *See Flaten*, 44 F.3d at 1463-64.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

Malingering (TOMM).  He also reviewed medical and school reports, including the psychological reports of Grant Gilbert, Ph.D., who diagnosed Plaintiff with attention deficit/hyperactivity disorder (ADHD) and borderline intelligence function in March 2002 (Tr. 335-40) and of Thomas Genthe, Ph.D., who diagnosed depressive disorder NOS and low average intellectual functioning on June 7, 2007.  Dr. Genthe's evaluation was administered when Plaintiff was 19 years old and preparing to graduate from high school.  (Tr. 359-68.)  Dr. Pollack also reported the Millon Clinical Multiaxial Inventory-III (MCMI-III) was attempted, but Plaintiff's responses were considered invalid and scoring results were not included in the record.  (Tr. 392, 425.)

Dr. Pollack diagnosed Plaintiff with ADHD; cognitive disorder, NOS; and Personality disorder, NOS.  (Tr. 394.)  However, at step two, the ALJ adopted Dr. Genthe's examining opinion rendered in 2007, that Plaintiff suffered depression and had low average range of intelligence.  (Tr. 19.)  In the explanation of his step two findings, the ALJ specifically rejected Dr. Pollack's 2009 diagnoses because the tests upon which these diagnoses were based indicated exaggeration or overstatement of problems, which rendered the results inaccurate.  (Tr. 19-20.)  This is a legitimate reason to reject a medical opinion.  *Tonapetyan*, 242 F.3d at 1149.

The ALJ's reliance on Dr. Genthe's diagnoses at step two is supported by substantial evidence in the record.  As found by the ALJ, Dr. Genthe administered objective intelligence testing in 2007, and reported Plaintiff scored in the low average range of intelligence.  He observed that Plaintiff exhibited normal cognitive

abilities, and her overall mental status and social skills were not significantly impaired. (Tr. 19, 364-65.)  Symptoms of fatigue, problems sleeping, increased appetite, and concentration problems reported by Plaintiff were attributed to depression. (Tr. 19, 360.) It is noted on independent review of Dr. Genthe's evaluation that Plaintiff also reported homelessness, sexual abuse by a step-father, and inability to see her mother who was using illegal drugs heavily, situations that could reasonably cause the depressive symptoms reported. (Tr. 359-60.)  Regarding the past diagnosis of ADHD, Dr. Genthe found a current diagnosis could not be established. (Tr. 360.)  In support of this finding he noted the ADHD diagnosis by Dr. Gilbert in 2002, was based in part on the mother's report and was in his opinion not reliable due to the mother's ongoing drug addiction, questionable insight into her daughter's condition, and lack of supporting documentation. (Tr. 339, 359-60.)

Regarding Plaintiff's RFC, the ALJ determined Plaintiff had no exertional limitations and was capable of simple tasks with some limitations in her ability to learn new tasks and procedures. He found her concentration and attention might wane in learning new tasks, and she may need assistance in goal setting. (Tr. 21.)  In making this determination, the ALJ summarized the evidence and gave weight to Dr. Genthe's report and the testimony of Dr. Klein, who reviewed the record in its entirety and gave a detailed explanation of test results from Drs. Gilbert, Genthe and Pollack. (Tr. 22, 422-28.)  However, ALJ Payne gave no weight to findings made by Dr. Pollack in his MSS.

Specifically, the ALJ rejected Dr. Pollack's opinions that

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

Plaintiff had a moderate limitation in her ability to perform activities within a schedule and maintain regular attendance (MSS conclusion 7), and a marked limitation in her ability to complete a normal workday without interruption from psychological symptoms (MSS conclusion 11). (Tr. 22-23, 396.) The ALJ reasoned these limitations were not consistent with Dr. Pollack's narrative report or objective testing result.   He also found Plaintiff's report that she is neither taking medication nor receiving professional care for the alleged mental impairments was inconsistent with the degree of limitation assessed, without explanation, by Dr. Pollack.   (Tr. 22.) The record amply supports these specific reasons.

For example, the record shows Dr. Pollack referenced MMPI-2 results that "indicate that Ms. Hobbs may have been exaggerating her difficulties" in his narrative report.   (Tr. 391.)   He also reported invalid responses on MCMI-III testing which resulted in termination of the scoring, and specifically referenced "the issue of malingering," overstatement of difficulties in testing; and a significant reduction in her intelligence test scores from the 2007 test scores "for no apparent reason."[3]   (Tr. 392-94.)   These are clear indicators observed by Dr. Pollack that Plaintiff's responses were unreliable.   As noted above, evidence of unreliable self-report

_____

[3]   Referencing elevated 2009 MMPI-2 scores (indicating a deliberate effort to appear impaired), Dr. Klein persuasively testified that "effort" was clearly the issue in Plaintiff's sudden decrease in intelligence scores in the 2009 evaluation for disability benefits.   (Tr. 424.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

is a legitimate reason to reject a medical opinion.[4]  The ALJ did not err in rejecting findings that are inconsistent with Dr. Pollack's own report and observations.  *See Tommasetti*, 533 F.3d at 1041.

Plaintiff appears to argue since results of the TOMM testing did not indicate malingering, and Dr. Pollack did not formally diagnose malingering, the ALJ's reasoning is flawed.  (Ct. Rec. 19 at 10.)  This argument is not persuasive.  Although Dr. Pollack did not diagnose malingering, he specifically noted a highly elevated F score on MMPI-2 testing and presence of the "issue of malingering." (Tr. 393.)  In response to questioning by the ALJ regarding these elevated scores, Dr. Klein explained the 113 F scale score on the MMPI-2 is suggestive of a deliberate attempt by Plaintiff to look more impaired than she is.  (Tr. 424.)  He also testified that other scales registered on the MMPI-2 administered by Dr. Pollack "would suggest someone who is paranoid schizophrenic with high agitation and poor impulse control and somebody who would have been taken into custody a long time ago." (*Id.*)  As observed by Dr. Klein, the record in its entirety does not reflect an individual with these characteristics.  (*Id.*)  Regarding the TOMM, Dr. Klein explained

_____

[4] Defendant concedes the ALJ's reasoning that Dr. Pollack's opinions were sought by Plaintiff's counsel and routinely reflect moderate and marked limitations in these functions, is not legally sufficient to discredit a medical source opinion.  (Ct. Rec. 21 at 9); *Lester*, 81 F.3d at 832.  However, where, as here, the Commissioner has provided other specific, legitimate reasons, the error is harmless.  *Batson v. Commissioner, Social Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

Plaintiff was not malingering on the issue of memory, which the TOMM is designed to measure.    Rather, the TOMM results indicated Plaintiff was "more likely to malinger about psychiatric symptoms [measured by the MMPI-2] rather than cognitive deficits."   (Tr. 425.)

Plaintiff fails to explain how the ALJ erred in relying on Dr. Genthe's evaluation, which is based on objective intelligence testing administered in which there were no indicators of exaggeration or malingering, as was the case in Dr. Pollack's test results.   (Tr. 360, 364-66.)   In addition, it is noted on review that Dr. Pollack's assessment of a moderate limitation in Plaintiff's ability to "understand and remember detailed instructions" is reflected in the final RFC assessment.   (Tr. 21, 395.)   The remaining functional categories were rated as having "no limitation" or "mild limitation," findings which support the ALJ's final RFC.   (Tr. 21, 395-97.)

Regarding weight given the medical expert's testimony, the ALJ did not err in relying on Dr. Klein's detailed explanation of the medical evidence or his opinions that Plaintiff did not have ADHD or significant mental impairments and was not moderately or markedly limited in her mental functioning.   (Tr. 20, 22.)   As discussed above, Dr. Klein's testimony is supported by and consistent with the Dr. Genthe's opinions, observations, and objective test results.   As such, his opinions constitute substantial evidence to reject Dr. Pollack's opinions.   *Andrews,* 53 F.3d at 1041.

The record supports the ALJ's reasoning, which is specific and legitimate.   Dr. Pollack's own narrative report and other evidence

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

1   in the record do not support the rejected limitations.  The ALJ did

2   not err in his evaluation and rejection of Dr. Pollack's opinions.

3   **B.    RFC Determination**

4       Although Plaintiff asserts she is more limited than found by

5   the ALJ in his RFC determination, the resolution of conflicts in the

6   medical evidence regarding her ability to work is the sole

7   responsibility of the Commissioner.  20 C.F.R. § 416.946; *SSR* 96-5p.

8   The issue before the court is not whether there is evidence to

9   support Plaintiff's interpretation, but whether substantial evidence

10  supports the Commissioner's findings. *Burch v Barnhart,* 400 F.3d

11  676, 679 (9th Cir. 2005); *Meanel*, 172 F.3d at 1113.  If the evidence

12  is there to support the Commissioner's interpretation, the court may

13  not disturb the findings. *Verduzco v. Apfel*, 188 F.3d 1087, 1089

14  (9th Cir. 1999).

15      As explained in the Social Security regulations, a RFC

16  determination represents the most a claimant can still do despite

17  physical and mental limitations.  20 C.F.R. § 416.945.  The RFC

18  assessment is not a "medical issue" under the Regulations; it is an

19  administrative finding based on all relevant evidence in the record,

20  not just the opinions of a single medical source.  As discussed

21  above, the ALJ properly rejected the marked and moderate limitations

22  assessed by Dr. Pollack. The ALJ explained adequately the basis for

23  his RFC determination, which includes the non-exertional limitations

24  supported by Dr. Genthe's evaluation, Dr. Klein's testimony, and the

25  RFC assessments by agency psychologist Mary Gentile, Ph.D. (Tr. 23,

26  359-68, 426-27, 383-85.)  ALJ Payne's RFC assessment reflects a

27  reasonable interpretation of the medical evidence in its entirety

28

1  and includes all limitations reasonably supported by the record.

2  **C.    Use of the Grids at Step Five**

3      Plaintiff argues the ALJ should have consulted a vocational
4  expert at step five before finding she was able to perform work in
5  the national economy.  However, the Ninth Circuit has ruled that the
6  use of the Grids in determining disability is appropriate when
7  nonexertional limitations exist unless the limitations
8  "significantly limit the range of work permitted by the claimant's
9  exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th
10 Cir. 2007)(*quoting Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.
11 1988); *Bates v. Sullivan,* 894 F.2d 1059, 1063 (9th Cir. 1990).
12 Further, a finding at step two that an impairment is "severe," does
13 not automatically establish "significant severity" at step five
14 requiring the services of a vocational expert. *Hoopai*, 499 F.3d at
15 1076.

16     Here, the ALJ determined Plaintiff could perform an unlimited
17 range of unskilled work at all exertional levels. (Tr. 24.)
18 "Unskilled work" involves simple duties that can be learned on the
19 job and require little or no judgment. The primary duties are
20 "handling, feeding and offbearing . . ., or machine tending," and
21 can be learned in 30 days.  20 C.F.R. § 416.968; *Terry v. Sullivan*,
22 903 F.2d 1273, 1276-77 (9th Cir. 1990).  He then found Plaintiff's
23 depression did not cause symptoms severe enough to erode the
24 occupational base of unskilled work at all exertional levels. (*Id*.)
25 This finding is supported by substantial evidence discussed above,
26 including the fact that Plaintiff graduated from high school and
27 achieved valid scores in the low average range in intelligence tests

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

administered in 2007 by Dr. Genthe.   The ALJ's finding is also supported by the opinions of Drs. Genthe and Klein that Plaintiff's mental status, cognitive abilities, and social skills were not significantly impaired. (Tr. 19, 20, 422-23, 360-61.)  Because non-exertional limitations supported by the record do not significantly impact the unskilled occupational base contemplated by the Grids, the ALJ was not required to call a vocational expert.  *Hoopai*, 499 F.3d at 1076.

**CONCLUSION**

The Commissioner's determination of non-disability is supported by substantial evidence and free of legal error.   Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 18)** is **DENIED**;

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 20)** is **GRANTED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **Defendant**, and the file shall be **CLOSED.**

DATED March 16, 2011.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17